YM

FILED
JANUARY 9, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 183

JUDGE KOCORAS
MAGISTRATE JUDGE COX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) |
| Plaintiff | ) ) |
| v. | ) ) |
| OLGA YAVORSKAYA, | ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Webster Bank, National Association, by and through its attorneys, hereby complains against Olga Yavorskaya for breach of contract and in support.

### JURISDICTION

1. This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348. This is a civil action between citizens of different states. The amount in controversy in this action exceeds $75,000.00 exclusive of costs and interest.

2. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(3) because Yavorskaya resides within the district and is subject to personal jurisdiction here.

### THE PARTIES

3. Plaintiff, Webster Bank, National Association ("Webster"), is a national banking association with its principal place of business located in Waterbury, Connecticut.

4. Defendant Olga Yavorskaya ("Yavorskaya") is a resident of Cook County, Illinois.

### THE FACTS

5. On December 29, 2006, Webster and Yavorskaya entered into a loan agreement evidenced by a written promissory note. (12/29/06 promissory note "Note" attached hereto as Exhibit A).

6. Under the terms of the Note, Webster agreed to loan Yavorskaya the principal amount of $825,000 at a yearly interest rate of 8.8750%. Ex. A, Note, ¶ 2. The loan was for the purpose of construction on the property located at 5052 North Winthrop Avenue, Chicago, IL 60640 and Webster funded the loan in full.

7. Pursuant to the Note, on February 1, 2007, Yavorskaya was begin making monthly payments in the amount of $6,564.07. These payments were to continue until Yavorskaya had "paid all of the principal and interest and any other charges described below that [Yavorskaya] may owe under [the] Note." Ex. A, Note, ¶ 3.

8. The Note also contained a "Maturity Date" of January 1, 2037, after which Yavorskaya agreed to pay in full any remaining amounts due under the Note. Ex. A, Note, ¶ 3.

9. The monthly payment amount was amended by the Construction Rider ("Rider"), attached herein as Exhibit B, which provided that until January 1, 2008, Yavorskaya could make interest only payments. See Ex. B, Rider ¶ 4. The Rider also provided that as of February 1, 2008, Yavorskaya would begin making payments of both principal and interest in the amount of $6,610.40. Ex. B. Rider, ¶ 4.

10. Yavorskaya made the scheduled payments through June, 2007. However, on July 1, 2007, Yavorskaya failed to make the scheduled payment, and thereafter has not made a single payment to Webster.

11. The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Yavorskaya] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. A, Note, ¶ 6(A).

12. The Note provides that if a payment is not made on the date it is due, Yavorskaya will be in default. Ex. A, Note, ¶ 6(B).

13. Therefore, Yavorskaya is currently in default.

14. On October 26, 2007, pursuant to the terms of the note, Webster sent Yavorskaya a notice of default, and now deems the full amount of principal and interest due. Ex. A, Note, ¶ 6(c).

## COUNT ONE – Breach of Contract

15. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 14 above as if fully set forth herein.

16. Webster offered to loan Yavorskaya the sum of $825,000 on the terms described in the Note.

2

17. Yavorskaya accepted the terms of the Note.

18. The consideration for the contract consisted of Webster's payment of the principal and Yavorskaya's agreement to repay the loan with interest.

19. The parties memorialized their agreement on December 29, 2006 by executing the Note, thus creating a valid and enforceable contract.

20. By funding the loan Webster fully performed.

21. Yavorskaya began performance by making monthly interest payments.

22. On July 1, 2007, Yavorskaya stopped making monthly payments, is now in default and thereby breached the contract.

23. Pursuant to the terms of the Note, Webster deems the entire sum of principal and interest due and payable.

24. The terms of the Note provided that Yavorskaya agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. A, Note, ¶ 6(E).

25. As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $825,000.

**WHEREFORE**, plaintiff Webster Bank respectfully requests that this Court enter judgment in Webster's favor and against Yavorskaya on the Note in an amount to be proved at trial including interst at the default rate, attorney's fees, costs, expenses believed to be in excess of $825,000 and order any other relief the Court deems equitable and just under the circumstances.

Dated: January 9, 2008

Respectfully submitted,

Daniel Lynch (Ill. Bar No. 6202499)     Webster Bank, National Association,
Henry Baskerville (Ill. Bar No. 6285712)
Law Offices of Daniel Lynch
150 S. Wacker Dr., Suite 2600             s// *Daniel Lynch* (filed electronically)
Chicago, IL  60606                              By: One of Its Attorneys
(312) 346-8700 / (312) 896-5883 (fax)

# Exhibit A – Note

# NOTE

December 29, 2006          Hoffman Estates          IL
Date                       City                    State

5052 North Winthrop Avenue, Chicago, IL 60640
(Property Address)

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $      825,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Webster Bank, National Association.** I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   8.8750  %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**
   (A) **Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the    1st    day of each month beginning on    February 1, 2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    January 1, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at
         Webster Plaza, 145 Bank Street, Waterbury, CT 06702
   or at a different place if required by the Note Holder.
   (B) **Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $     6,564.07    .

4. **BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument     Form 3200 1/01
Page 1 of 3                                     4704247015                              Initials: _____

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____/s/ Olga Yavorskaya_____(Seal)
OLGA YAVORSKAYA                                          -(Borrower)

_____(Seal)
                                                         -(Borrower)

_____(Seal)
                                                         -(Borrower)

_____(Seal)
                                                         -(Borrower)

*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument   Form 3200 1/01
Page 3 of 3                        4704247015                                      Initials: _____

# Exhibit B – Rider

# CONSTRUCTION RIDER TO NOTE AND SECURITY INSTRUMENT

THIS RIDER is an agreement to modify the terms of my loan to provide for a period of time during which future advances will be made to pay for the construction of improvements upon the Property.

LENDER - As used herein the term Lender shall mean

### WEBSTER BANK, NATIONAL ASSOCIATION

or any assignee, transferee or successor in interest thereto. As used herein the words "I", "me" or "my" shall mean any person who signs below as Borrower.

This Rider changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated    **December 29, 2006**    in regard to the property located at

**5052 North Winthrop Avenue, Chicago, IL 60640**

("Property"). I agree that the covenants, terms and provisions set forth in this Rider will amend, supercede and replace any inconsistent terms, covenants or provisions in the promissory Note and Security Instrument, where the two are different.

A. CONSTRUCTION LOAN - FUTURE ADVANCES. THE ADDITION OF THIS RIDER TO THE NOTE AND MORTGAGE IS INTENDED AND AGREED TO MAKE THIS A CONSTRUCTION LOAN SECURED BY A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF THE LAWS OF ILLINOIS (INCLUDING WITHOUT LIMITATION §9-313 OF THE ILLINOIS UNIFORM COMMERCIAL CODE). THE MORTGAGE SHALL SECURE FUTURE CONSTRUCTION LOAN ADVANCES FOR THE CONSTRUCTION OF IMPROVEMENTS ON THE PROPERTY, AS WELL AS ALL SUCH ADDITIONAL SUMS AND AMOUNTS AS ARE SET FORTH IN THE CONSTRUCTION LOAN AGREEMENT, NOTE AND LOAN DOCUMENTS. ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE BEEN MADE BY THE LENDER UNDER AN OBLIGATION TO DO SO, AND SHALL HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

B. BORROWER'S WAIVERS IN CASE OF DEFAULT . IN THE EVENT OF A DEFAULT, BORROWER HEREBY WAIVES ALL RIGHTS OF RE-INSTATEMENT, REDEMPTION, APPRAISEMENT, VALUATION, STAY AND EXTENSION TO THE FULLEST EXTENT THAT SUCH RIGHTS MAY BE WAIVED UNDER THE LAWS OF ILLINOIS, (INCLUDING WITHOUT LIMITATION THE ILLINOIS MORTGAGE FORECLOSURE ACT.

C. RECEIVER - MORTGAGEE IN POSSESSION. IN THE EVENT OF A DEFAULT, IN ADDTION TO LENDER'S OTHER RIGHT AND REMEDIES, LENDER SHALL BE ENTITLED TO (A) THE APPOINTMENT OF A RECEIVER UNDER AUTHORITY OF THE COURT, WITH FULL LEGAL RIGHTS AND POWERS TO COMPLETE THE CONSTRUCTION OF IMPROVEMENTS, AND TO PRESERVE AND PROTECT THE PROPERTY; AND/OR (B) TO BE APPOINTED BY THE COURT AS "MORTGAGEE IN POSSESSION" WITH FULL LEGAL POWERS, RIGHTS AND PRIVELEGES PERMITTED UNDER LAW.

1. PROJECT COMPLETION DATE
   The loan is to be disbursed in installments to finance construction, which I promise to complete on or before    **December 21, 2007**    , referred to as the **"PROJECT COMPLETION DATE"**, in strict compliance with the project Plans and Specifications which have been provided to Lender.

If, the Lender determines that the construction of the project or completion of all of Borrower's obligations regarding the documentation thereof will not be completed by **December 21, 2007**, it shall be a sufficient basis for a default, and Lender shall have the right to stop making disbursements of money even before **December 21, 2007**. In such circumstances, in addition to all of Lender's other rights and remedies, Lender shall have the right to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees. It is expressly agreed that "TIME IS OF THE ESSENCE" with respect to the full completion of construction and of all obligations regarding the documentation thereof.

### 2. WORK IN PLACE

The Lender has agreed to make the loan herein described to be paid in installments as the work is completed and to disburse funds only FOR WORK IN PLACE, based upon inspection.

The Lender is obligated to advance the full amount of the loan $ **825,000.00** provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that the loan is not in default.

### 3. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall inspect the project in order to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for Lender's inspection is to determine the approximate amount and value of the work which has been done, so that Lender may disburse funds for such work in place. Such inspections shall not require a review by Lender of the quality of the construction. **As Borrower, I will not rely on the Lender's inspection for any purpose whatsoever.** Rather, I will be solely responsible for the progress and quality of construction, and the discovery of all delays, defects, faults, imperfections and deviations from the Plans and Specifications shall be my sole responsibility as Borrower.

### 4. AMENDMENT OF THE OBLIGATION TO REPAY LOAN

1. Because construction disbursements will be made at times and in amounts which cannot be accurately predicted between the date of this Rider and the Project Completion Date which is **December 21, 2007**, I will not begin to repay my loan as provided under the terms of Paragraph 3 of the Note that I signed.

2. Instead, I will pay interest only until **January 1, 2008** referred to as the "CONVERSION DATE". This is the day my last "interest-only" payment will be due.

3. The terms of Paragraph 3 of the Note, are hereby amended to provide that I will make my first payment of principal and interest on **February 1, 2008**, in the amount of **$6,610.40**, unless I am advised otherwise by the Lender in writing.

### 5. CONSTRUCTION PERIOD INTEREST

During the Construction Interest Period, I will pay the Lender interest on the principal amount that it has disbursed under the loan. Interest will be computed daily at the rate in effect under the Note, on the basis of a 365 day year, for the actual amount of principal outstanding. This interest will be billed to me on the 1st day of each month during the Construction Interest Period until the Conversion Date, and it will be my responsibility to pay the amount of interest billed to me within 15 days. Non-payment of interest by the 15th day of the month will be a default under the Note and will entitle the Lender to all remedies contained in the Note or the Security Instrument.

### 6. DELAYS IN THE COMPLETION OF CONSTRUCTION OR PERFORMANCE

If the construction of all planned improvements or repairs, and the performance of all of my obligations regarding the documentation thereof is not completed by **December 21, 2007**, then in addition to all of its other rights under the loan documents, the Lender, at its option, has the right to do any or all of the following:

**A. DEFAULT** - declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or

**B. CONSTRUCTION PERIOD EXTENSION** - agree that Lender will extend the time for construction through modification of the loan documents, (Construction Period Extension) provided that Borrower co-operates fully in the execution thereof and pays the costs, fees and expenses associated with such extension, including Project Delay Surcharges, extension fees, document preparation fees, courier fees, recording fees, title insurance costs, and all other costs incurred or required to complete the extension; or

**C. DELAYED COMPLETION RESERVE ACCOUNT** - agree to allow more time for construction to be completed and to disburse any remaining loan funds into a Delayed Completion Reserve Account on which interest shall then become due and payable at the Note Rate, as though the funds had been fully advanced for construction completion; provided (1) that Borrower co-operates fully in the execution of documents establishing the same as required by Lender, and pays the costs, fees and expenses associated with the establishment of such Delayed Completion Reserve Account, including Project Delay Surcharges, extension fees, document preparation fees, courier fees, recording fees, title insurance costs, and all other costs incurred or required to complete the establishment of such account; and provided (2) that Borrower shall be required to begin repaying principal and interest under the loan documents as though construction had been completed and as though all funds were disbursed by the Project Completion Date; and provided (3) the unexpended loan funds will be held in a Delayed Completion Reserve Account until the construction is completed per the plans and specifications, and until all of the conditions necessary to complete the conversion of the loan to the Amortization Period have been completed.

**D. NO OBLIGATION TO EXTEND** - Lender shall have no obligation to permit more time for construction or the full performance of Borrower's obligations. The time selected by Borrower for the completion of the project is Borrower's responsibility, and failure to fully complete all construction and meet all required conditions within the time chosen by Borrower can be a default. Any extension of time for performance that is agreed to by Lender shall be at Lender's sole discretion.

**7. NOTICE TO LENDER OF CLAIMS AND LIENS.**
Any person wishing to claim the benefit of any Mechanics Lien is advised by the recording hereof that the address of the Lender for receipt of any **Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner**, or other mechanics lien claim under Illinois law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested.

**Attn: Robert M. Imperato, Vice President**
**Webster Bank, N.A.**
**Construction Lending Center**
**609 West Johnson Avenue**
**Cheshire, CT  06410**

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents, demands or claims received by me regarding the same.

**8. EXTINGUISHMENT AND SURVIVAL.**
Unless otherwise extended in writing, on        December 21, 2007       , the provisions of this Rider, except paragraph 4 and this paragraph, shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

BY SIGNING BELOW, on this day Borrower accepts and agrees to the terms and covenants contained in this Rider.

Date:_____    Borrower: _OLGA YAVORSKAYA_____

_____         _____
Borrower:                               Borrower:

_____         _____
Borrower:                               Borrower:

The undersigned witnessed the signature of the Borrower(s) at the time this Rider was signed.

_____         ____12.29.2006_____
Settlement Agent                        Date

EZ ONE™ - ILLINOIS  Fixed Rate Construction Rider To Note And Security Instrument
© Interstate Closing Systems, All Rights Reserved    Page 4    4704247015    XLLpb